Yes, Your Honor. This is Dwayne Santana. I do reserve five minutes. All right. Thank you. You may commence. Well, good morning, members of the panel. Thank you for this opportunity to appear by video. It is, I think, a much more, well, a better point of view, excuse me, actions. So, what we're appealing is the bankruptcy court's denial of Mr. Tinajero's motion for attorney fees after prevailing at trial on a 523A2 action. We contend that the bankruptcy court made plain error of law and by disregarding California law and misapplying Section 523D of the bankruptcy code. We believe that the bankruptcy court refused to award fees under the purchase and sale agreement on the basis that a 523A2 action was not an action on the contract. But when you take a look at the record and you take a look at the transcript, I think you can see that the bankruptcy court didn't even pay any attention to the language, the actual language in the purchase and sale agreement. That contract could not have been more broadly written. It couldn't have been more applicable to this type of proceeding. That provision is a standard provision in California purchase and sale agreements for all realtors in the state. It applies in any action or any proceeding arising out of the agreement in a matter by and between the parties. This contract is the standard California residential home sale agreement, correct? So it's used in hundreds of thousands of transactions every year, tens of thousands? At minimum, because it applies in any situation where there is a realtor. They're authorized to use that contract. And the problem I'm having with your argument, when I think about it, because I don't see any customized, but it wasn't. So it's the generic form. And so the question I keep asking myself is, do people, when they enter into these contracts, really believe that the attorney's fees provisions survive a specific performance judgment? Because that's what we have here, right? Yes, your honor. The specific performance judgment is quite common in a breach of this nature, when there's a refusal to perform by the party. And so the attorney fees provision would have to apply. Let's say, for example, a specific performance judgment is issued, as in this case, and Mr. Tina Harrell was required. And in fact, I don't know if you recall, but if you take a look at the record, you'll see that he actually didn't even sign the grant deed by the order of the court. They had to get the clerk to sign it. And they got an Eliza. Exactly. But what if it was the other way around? What if the buyer was unable to perform? And you had a specific performance judgment? The buyer's unable to perform, you would still have to, you're going to say then, well, what about Mr. Tina Harrell? Can't he come back to the court and say, wait a minute here, you ordered me to perform. I deposited the deed into the escrow. I did everything you told me to do. And now the other party's not performing. Does that now mean I can't get legal fees for having him cause me damages by his refusal to perform? Let me ask you a question about the facts, which may be just me not remembering them. But by the time the bankruptcy was filed, had the contract been fully performed? Had the sale closed? The sale had closed. The sale had closed. Whether or not the contract had been fully performed is really a question of interpretation because the bankruptcy, I mean, the state court reserved jurisdiction to implement the terms of the contract. One of the terms of the contract was the payment of legal fees in accordance with the contract. So there's a question as to whether or not it was fully performed. It wasn't fully performed, at least with respect to Mr. Tina Harrell's obligation to pay fees on that. I was going to say, you mentioned the attorney's fees. Were there other unperformed obligations that you can think of? Again, he didn't perform because he didn't deposit the deed. I mean, by the time the bankruptcy was filed. By the time the bankruptcy was filed, the escrow had actually closed and there was a completed sale. So the plaintiffs in this case had, in fact, acquired title. Were there ongoing warranties that survived the closing? There are warranties and representations with respect to, you would typically find in any transfer disclosure form associated with the property that would be tied into the purchase and sale agreement. Those things do happen and if there's a misrepresentation or something to that effect, the buyer could, within the time frame that's allowed, institute an action for any sort of misrepresentation regarding the condition of the property. That would be based upon the contract as well. The specific performance judgment doesn't bar that. It simply just requires a specific act to be performed. In a very real sense, there was no final monetary judgment that substituted for the performance of contract. That never happened in this case, as you would typically have in a monetary suit for damages. So you would differentiate this, you would say, if it was just a suit for damages, would that end it? The language with respect to merger by judgment, in those cases, each of the whole theory regarding the substitution and the merger by judgment is that performance is no longer required. You don't have to produce the beans or make the furniture, whatever it is that you have to do. You just have to pay money for whatever it is that you fail to do. But isn't election of remedies all about electing between those two options? I'm having trouble with the notion that you could never have merger with a specific performance contract, but you could with a contract that awards monetary damages. I think that's what you're saying. There are some cases, and I cited them in the brief, that do talk about a specific performance judgment being interlocutory in nature. In this case, there was no final decree. There was no final report back to the judge saying everything was performed. At least that's not part of the court docket, and there's no evidence of that. Here, what you have is you do have a specific performance judgment where the sale was completed. However, there are still remedies that are available that are not merged into that judgment, such as fraud or misrepresentation. In fact, in this case, in this very BAP case, we were ordered or remanded back with no specific instructions as to how to do it to try the cause of action for fraud. Do you think there was ever a trial on fraud? The trial was based upon the First Amendment complaint. In the First Amendment complaint, the instructions by BAP to the parties was, you guys decide how you want to go forward. The fraud is the underlying basis of the federal cause of action for non-dischargeability. Yes, there is a trial on fraud in the sense that they have to establish all the requirements necessary for finding a fraud in order to accept that from discharge. The same exact evidence that was in the state court case with all 52 exhibits by the plaintiff, the whole burden that was put on the defendant as well, was presented at the trial. We did it by declaration, and what happened here was the plaintiffs relied upon collateral stoppage in order to prove their case. They didn't seek to do an independent factual determination. That was their choice. You're right at five minutes, so do you want to stop now, or do you want to talk a little bit about 523D? No, I think this is good. So we'll reserve the rest of your time, and we'll have Appalachia Council address your arguments in response. Mr. Lopez. Good morning, Your Honor. I'd like to reserve five minutes. You don't get to reserve. He gets the last word. You're 15 minutes hard. Okay, thank you. I think the case is fairly straightforward. The attorney's fees clause that Mr. Cheney-Harrow is trying to enforce under 1717, 1021, 1023, clearly don't apply. We have a judgment here, not only for the specific performance, but for the attorney's fees. Once we went into the bankruptcy court, the only issue that was before the court is what we were trying to determine was, did the attorney's fees, were they stemmed from the fraud, or did they stem from the contract? If they stem from the contract, we weren't allowed, obviously, to in the trial court, and I'm the one that drafted that statement of decision in the judgment, and the attorney's fees request, and I asked for the attorney's fees under 1717 under the contract, because I believed, under the decision of Archer versus Warner, that the election of remedy didn't extinguish the fraud. I could come back and say, well, you know, this whole thing started because of what Mr. Cheney-Harrow did. If you look at the statement of decisions, the judge heard all evidence at the trial court level, made the decision that there was fraud, made the decision that he had committed everything that was required for fraud. So, based on that statement of decision, I didn't need to re-litigate this in the adversary proceeding. All that we needed to know was where did these attorney's fees stem from, and they clearly stem from, in my opinion, the fraud, and the election of remedy didn't change that. Actually, Judge Russell and my appeal, unfortunately, BAP didn't see it the same way. Last time I was here, you said it wasn't clear. It wasn't clear where it stemmed from, the judgment it's made. So, that's why we... I believe that wasn't quite what we said was necessary for the decision that was actually made. Okay, well, that's why, you know, that's why I think Judge Taylor was a bit confused as to the nature of the trial. The whole purpose was, given the procedural posture of that, the fraud findings were not actually necessary for the specific performance. Therefore, they didn't have preclusive effect. It was just the denial of summary judgment. It didn't mean we didn't give instructions. It was just a reversal on summary judgment so that the parties could then go back and try the case. So, I don't... I have a confusion as to where that tripped up that process. Okay, well, maybe I misunderstood the decision, but nevertheless, the trial wasn't on the fraud. I already had the fraud judgment. There was a statement of decision that made all the findings of fraud. There was no... I think what it is, we're sort of talking multi-dimensional chess here because what we're saying is issue preclusion. We couldn't apply issue preclusion because one of the performance judgments, it wasn't. We all recognize all the dirty bits the state court found. You could have, in front of Judge Russell, had a fraud trial. Yes, you would have had to have proven it again in front of him, but you didn't. And you didn't appeal from that on a procedural whatever he decided on that. So, the only issue we have right now is the shifting of attorney's fees. And let me ask you about that. He has a couple of bases. I don't see on appeal that he's really raised 1717. He hasn't discussed it at all in his appellate documents. He's relying on the intended to protect consumers from their creditors coming in and sort of extortion through filing a complaint. This doesn't feel like that, but still the statutory language is the statutory language. So, why isn't this a consumer transaction where the automatic shifting happens? It's not a consumer transaction because there was a sale of real property. There was never any evidence as the reason why he entered into this agreement. There was no evidence of what he was going to do with the proceeds. The evidence that was there was that he wasn't supposed to enter this agreement. He knew of these dissolution proceedings. He knew that there was this restraining order not to sell a property. From that, the judge, the state court inferred that he was committing fraud. If you're trying to commit fraud on your spouse, that's hard to say that that is a consumer transaction. Was he living in the house at the time of the sale contract? He was the only person living in the house because his wife had moved out and she was living in an apartment. Okay. And the house was titled just in his name? Correct. As a single person. That's a problem. I think if the family law attorney would have allowed the list of tenants, we wouldn't be here. Or it would have gotten her to sign off on it. Correct. All right. They were exposed in that way. The point that counsel has argued most vehemently, we haven't gotten to 523D, I took you there, is this idea that there was no merger because this was a specific performance judgment and there's all these contractual issues that remain. And he said this is common. I have to say in almost 40 years, I've never seen what you say is fairly common. That doesn't mean it isn't. It just means I haven't seen it. Why isn't the document we're talking about here the judgment as opposed to the contract? Or do you agree that it is the judgment, not the contract? Here, it's the judgment that we were litigating. The contract had been performed on. The specific performance, I think, counsel is confusing with partition. Partition, when you sue for partition, you get an interlocutory judgment. You have to appoint a receiver to sell the property and report back to the judge. Here, the judgment doesn't say that. He was forced to sell the property. He didn't want to sign the deed. We appointed an analyzer and we concluded the transaction. Contracts performed on it. There's nothing left but these attorney's fees that he didn't pay. That's why Mr. Tannehill filed the lawsuit because he didn't want to pay the attorney's fees. Now, the attorney's fees clause that the opposing counsel is arguing is very broad. Your Honor made a good point. This contract is a standard purchase contract. Thousands of counsel has pointed to that states that that contract provision for attorney's fees is broad enough to encompass adversary proceedings. It's only been interpreted to include torts and breach of contract. The reason it has that is because it's not necessary in California to include that language in a contract because there's a different statutory scheme when you have a judgment that includes attorney's fees to request attorney's fees as costs when you're attempting to collect. That's CCP section 68540. That is under judge enforcement law. Here, there would be no need to have that provision in this contract because once you have a judgment that says you're entitled to attorney's fees, you don't have to look at the That's the mistake I made originally when I was granted the motion for summary judgment. I submitted an application for attorney's fees under 1717. That was incorrect. I withdrew the motion. I even put an explanation why I had done that at the trial court level when Mr. Tannehill was requesting attorney's fees. My client still would have been entitled to attorney's fees if we would have prevailed, but under a different code section. Now, are you aware of any law that the code section you mentioned, 685.010, what that does is it does take that contractual attorney's fees provision and bring it into a judgment. You, the judgment creditor, can still obtain your attorney's fees. Is there any countervailing case law or concept that allows the judgment debtor to recover attorney's fees post-judgment? For example, you lose a motion to compel him to do something in the collection process. That's a good question, your honor. There is case law. It's the Jaffe v. Parcell. That case talks about collecting fees, and I can give you the site on it. It's 165 4th at 927. It's a 2008 case. That case talks about a judgment creditor coming into court, and they won in the dischargeability action, and then they went back and asked for attorney's fees because they prevailed on it. They did get awarded attorney's fees in that section. I'm not aware that the judgment is a reciprocal attorney's fees provision. I did research on that. I didn't find anything that says that. That would be unusual under California law, right? There's a pretty strong policy in favor of reciprocity of attorney's fees provisions, right? That's under contract under 1717. You're correct, but again, here we have a judgment. It's not a contract. It's a judgment that he was ordered to pay. If you're attempting to collect on this judgment, and judgments are hard to collect. You're not going to win every time you try to collect a judgment. I think it really would not make sense that every time the judgment debtor would thwart your attempts to collect that now he's going to go and ask for attorney's fees. Going back a little bit to what you said, you talked about the difference between contract claims and tort claims, and I get that, but isn't there a gray area between the two? We have this concept of tortious breach of contract, which I think is recognized under California law. Judging from the state court's statement of decisions, it certainly sounds like the state court thought this was a tortious breach of contract. Why do you have to go in one pigeon hole or the other? Why doesn't this fall in giving the creditor the advantages of both, at least to some extent? I'm not sure, Your Honor, if you're asking me why did we choose the election of remedies? I guess what I'm saying is you elected that remedy. I get that, but why should that necessarily deprive you of every possible recourse under the other theory for other things that weren't necessarily covered by the judgment? You got your contract enforced. You got the sale closed. That didn't terminate all the contract obligations, did it? There are still warranties about conditioning and so forth that survived the closing? Yes, but that's not what this case is about. I understand that. I'm just saying that the notion of merger is this contract is done. There's nothing left in this contract. All that's left is a judgment. At least in theory, that's not really true in this case. Nobody brought suit on these surviving warranties and so on, but the contract wasn't really over when the title passed, was it? It was over as to the fraud and the inducement. It was over as to the breach of contract. Well, that breach of contract. Yes, exactly. To the others, I guess if later we would have found out it's not marketable title, maybe I could have come back in. You probably had enough of this guy. You probably wouldn't have wanted to come back against him again. I was in agreement with Judge Russell. He stated that Mr. Sandro, he got bite by the skin of his teeth. All I had to do was clarify in my motion what this was based on. I'm pretty sure I would have got it, and I've been kicking myself ever since. We all have something we're kicking ourselves about at any given point in time, let's be honest. Daily. Daily. Hourly. Anything further? You have about a minute left. No, just basically this concept of merger. I know Posting Counsel, he took us on a trip to Florida. Those cases are easily distinguishable. Those are not real estate cases. They're foreclosure cases. The contracts are completely different. The provisions are completely different, and the law in Florida is different, especially to this issue of judicial estoppel. They don't recognize that there had to be some type of prejudice to the opposing party. Here, they weren't prejudiced at all. Also, regarding the issue that the court cannot take this issue up on appeal, I think the court has discretion to do that when it's just a legal issue and it has the record before them. I read that out of the Federal Appellate Practice of the Ninth Circuit from the Writer's Practice Book, Section 19.7 clearly states that, and it cites a long list of cases. All right. Thank you very much. All right. We have just under five minutes for Mr. Calzada to respond. Yes. A couple of things. When we first filed this motion for return fees, I really didn't expect the pushback that I got on the arguments that we were making about the contract being the basis for the legal fees. The plaintiff, in this case, in their complaint, had pled attorney fees based on the contract. When we first lost the lawsuit and the first go-around, they filed a motion for attorney fees based upon 1717 in the contract. When we got back, they filed an amended complaint and doubled down and fully explained the basis and legal theories all in the complaint for attorney fees under the contract. Then, when we go to trial, they put a trial brief in there explaining all the legal grounds and basis. The same thing that I was arguing when we were trying to make our case for it and saying how they're entitled to fees. But when the tables are turned and we've argued in a successful trial and Judge Russell said, we know I was wrong. The BAP was right. You haven't shown me anything new. Where's your proof? Where's your underlying proof? Because the BAP gave you an opportunity to present underlying proof of the fraud. He says, well, there isn't any. Well, to be fair, I'm not sure what he said. I'm not sure that's it. I'm pretty sure he didn't say your client's pure as the driven snow and didn't do anything wrong. In fact, to the contrary, he pretty much said technically he gets off, but he's a rotter, to use my own term, not his. Well, Your Honor, yes, in the sense that he was saying that he was single when, in fact, he was still married and he was in dissolution proceedings. Oh, and there was that TRO. Exactly. Those are not good facts. But in the end, when the trial judge saw all the evidence, including the wife's complaint and intervention, he still had the right to sell. They said, you know, looking at this, the wife did not have a community property interest in there. Therefore, you may have lied, but the lie did not cause you to be unable to sell the property. So they were able to actually obtain the property at the price that the guy promised to pay. Let me ask you this. You're not talking about what was decided, what was litigated in the state court, right? What contractual issues were left for the bankruptcy court to decide? Were there any contractual issues at all that the bankruptcy court had to decide? Contractual issues in the sense that there was an allegation of fraud in the inducement in the contract. He had to determine whether or not there was a misrepresentation about his ability and legal authority to sell, and if that was actually contained in the contract. I presented to you the actual testimony in the actual contract showing that that was the basis of their case. The problem that they always had was the question of causation and damages as it relates to what actually did happen. He actually was able to complete the sale. After they brought a legal action. I mean, it's an election of remedies issue. I don't think it's fair to say that if you're looking straight at the contract. I mean, we're sort of getting a field from what we should be talking about, and you only have 48 seconds, but I'm not buying that. Let's just put it that way. With regard to the 523D matter, your honor, it is important to know that this is a consumer debt because that determination is made at the time that the debt is incurred. The debt was incurred when he refused to sell his property. That's not a commercial motive. That is a personal familial purpose. The debt was incurred when he agreed to sell the property. That's when he signed the contract. The debt was incurred when he refused to sell, when the breach occurred. He owed the obligation before the breach, right? He owed the obligation, but that was interfered with because he was willing to sell. He was totally willing to sell. That's not what created the debt. What created the debt was his refusal to sell. That's what created the debt. That's what created the kids. You have the burden of proof on this. What's your best proof of a typical consumer motivation in the record before us? In the record before you is you have the actual basis in the complaint that said that Mr. Tina Harrell refused to sell the property after he changed his mind. Thank you very much for your good argument. Thank you for participating in this forum. I agree. It's beneficial to see the two of you. We're thankful that you think it's beneficial that we've appeared this way. We will take this under submission and we will hear the next case.
judges: Taylor, Faris, Spraker